Good morning. Holly Sullivan on behalf of Mr. Flores-Acuna. Here the jury decided what happened in the next 14 years of Mr. Flores-Acuna's life without knowing basic information in order to judge his credibility. They were never informed before he testified during cross-examination, during the testimony of any witness that he had problems with memory, with communicating, and had cognitive function impairments. The jury lacked the most basic aspect of evaluating his testimony and they couldn't meaningfully evaluate it. Aren't we talking about a motion for a new trial here? Yes. And when we talk about a motion for a new trial, if I'm to be guided by precedent at all, you're supposed to establish the evidence must be newly discovered, the failure must not be the result of a lack of diligence, and then it must be material. Aren't those the first three points? Correct. Okay. And in determining about this, I'm to give what deference to the district court? It's an abuse of discretion. So the district court, looking at this, I'm to find that they abused their discretion in not going along with what you're now suggesting. Is that correct? Correct. Which means what to you? Which means that, well, first, whether or not the district court properly applied the Harrington factors, which he did. Well, I understand that, which he applied them, didn't he? Correct. So then, at that point, it's a matter of it's got to be what in order to be an abuse? Illogical, implausible, or that the... Without support or inference. Without support or inference is drawn from facts in the record. Okay. Now, let's go to newly discovered, then. Your theory right at trial was that the defendant had been tricked into unknowingly smuggling the meth. Correct? Correct. That he was capable of being manipulated, that he was a simplistic man, uneducated, and potentially low intelligence. That was the theory? Not entirely. Well, I mean, I read the transcript. I have a tough time understanding how that wasn't the theory. Because then I tried to figure out why is it newly discovered that he lacked education and that he potentially had low intelligence? The issue I have is with the potentially low intelligence. It was repeatedly stated that he was illiterate, that he couldn't read, and that he lacked education. Simplistic and uneducated, you'd go along with. I would go along with that. That's correct. But potentially low intelligence, you wouldn't. Correct. And then you're suggesting, then, that it's newly discovered that he lacked education or that he potentially had low intelligence? Not the lack of education. I think it was clear during the testimony and even statements, opening statements and closing statements, that he had no schooling, that he couldn't read or write. Would you agree with me that the district court had a trial in this case where the district court was able to effectively assess your client and his theories? His theory of defense, yes, a general denial of knowledge. Well, in fact, the defendant was at the trial, correct? Correct. And so now we're throwing on newly discovered, and now I'm supposed to, with the district court, broad discretion, implausible, illogical, without support, suggest that this is new? It's implausible for the district court to say it isn't new? It is. It is new. There's a large difference between presenting evidence that someone can't read or write and that they actually have memory problems, that they can't focus without having a repetition of questions. Not they. He. He can't focus. We're only dealing with one person, right? Correct. Correct. Capable of being manipulated, you'll agree that that was shown, that was part of the theory, simplistic and uneducated, but simply the fact that they now come up with new evidence, that is, of low intelligence, that's new? It is. So what's due diligence? Well, due diligence is whether or not the attorney, counsel, was unreasonable in failing to discover this evidence. What did the defendant or his counsel do to seek a mental assessment prior to trial? He did not seek a mental assessment prior to trial. So he didn't do anything? There's no evidence in the record that there was a mental assessment prior to trial. Was there adequate time? I believe so. He was in custody six months, wasn't he? He was in custody six months. Didn't have any trouble getting permission from the court to get this mental assessment? I did not. So then why is due diligence not straight in the file? How can I find there's been diligence here? Why can I find the district court is illogical in thinking there's been diligence? Well, it's whether or not the counsel, the attorney, was unreasonable in failing to discover it. So because an attorney discovered it doesn't make another attorney unreasonable for failing to discover it. There was no indication? Well, but it's got the district court now. I'm giving them the deference. And I've got to find that the district court's decision, given that nobody saw it one, wasn't in the record they even thought about it, there was plenty of time to do it. The court would have easily given them the time to do it. So he was totally diligent, or she, the attorney, was totally diligent in not doing it when it should have been obvious. I'm saying he's not unreasonable in failing to do it. It was not an unreasonable determination. There were no factors where he was acting outrageous when he was in court. There were no factors that put anyone on notice, including his attorney or the government or the court, where, unlike the case before us, where there was a reason to think that this person might have some type of mental issues. The only evidence that came out is in evaluating his credibility during his testimony. He was completely unable to remember dates. But what you're really talking about is an ineffective assistance of counsel claim. And shouldn't that be preserved for habeas? It could be an ineffective assistance of counsel claim. So that's all it is. Because on due diligence, the question is, is there evidence that trial counsel exercised due diligence on the motion for motion to trial, right? And if he did exercise due diligence, then the motion should be denied, right? It's whether it was unreasonable for the defense to have failed to discover it more promptly. What caused the second attorney to have him examined for a mental condition? Based on counsel's my interactions with him. So that was you? Yes. Now, why didn't that exist with the first attorney? I can't say. All I know is from the declaration submitted by the first attorney, he didn't recognize the same issues and felt that if he had that same report before him, if he had been made known of those issues, that he would have made different decisions in how to structure the trial. Wouldn't have put him on the stand is what he said. The very first thing that he said. Yes. So, okay. Let's imagine a trial where Mr. Larson does not testify, which is what he says he would have done. Is it probable that there would have been a different outcome in the trial? I believe so. And the reason I believe so is looking at cases like the Rom case and the Finley case and looking at how the testimony would be evaluated in whether or not this person who has this mental deficit would have answered questions differently. The government's sole focus of cross, and then in their closing argument, is that essentially the devil is in the details, that he has contradictions in dates, times, that he doesn't remember basic things such as when he decided to buy this car, when he put a name on a phone, that he didn't know the person's phone. All of these facts were the sole focus of both the defendant's cross-examination and of closing argument. And if it wasn't important and it wasn't material and it wasn't the main crux of this case where the only issue was knowledge, they wouldn't have done it. They wouldn't have gone over it. So the ---- Can you tell me why? Pardon me. I hate to take you back to due diligence. It seems to me that the due diligence requirement is a burden on the movement to show that even with the exercise of due diligence, the newly discovered evidence could not have been discovered. Here there's no question but that a mental assessment would have discovered that evidence. So therefore, the attorney's failure to do due diligence for the purpose of a direct appeal We'll talk about habeas later. The purpose of a direct appeal is attributable, imputable by agency principles to the defendant. So there's no showing here that there was any impediment to determining the mental acuity of your client. There was no showing of any impediment from the attorney. But the district court did not find that the attorney was unreasonable in failing. Well, but that's not the question. That would be a question under Strickland on habeas, ineffective assistance of counsel. But on direct appeal, we asked the question, was there any barrier to the discovery of the man's mental condition? And you haven't told me what that barrier to discovery of that was, other than the first attorney's unreasonable actions. But that's not a barrier. That's imputable to your client by agency principles. I'm not saying that there was a specific barrier. The barrier. Then let's go to some other issue in the case. The barrier is that it was not unreasonable. There was no unlike the Hinkson case and other types of cases where the attorney is actually sitting on information, has knowledge of that information, and fails to provide it, fails to use it. Now, in Hinkson, the defense attorney, I wrote that opinion. The defense attorney took a deposition from Mr. Swisher and found out everything about Mr. Swisher, about his military record, Vell Nahn, right? And didn't use it at the trial. So there was no barrier to finding out more and proving more at the trial. That was the basis of the motion on a new trial being denied under Harrington v. Richter. And in this case, the attorney wasn't sitting on that information. The attorney didn't have the report. And there was no barrier for him not finding it out. But we've gone over that ground. All right. Thank you. Good morning, Your Honor. May it please the Court. Andrew Hayden on behalf of the United States. The defendant is unhappy with the jury's verdict. He would like a second bite at the apple. But in order to give him that second bite at the apple, this Court, as Judge Smith has indicated this morning, would have to determine that Judge Hayden's written decision, which appears on pages 8 through 11, was illogical, implausible, or not supported by inferences in the facts of the record. To quickly address those things, first ---- Would you just ---- I know you have your own order you want to go in. But I'm concerned about the materiality prong of Harrington. Yes, Your Honor. I think that's significant. And I can address it in two ways. First, you asked the question, what would have occurred if the defendant had not testified? And to believe appellant's argument sort of puts it in a vacuum, like the entire case hinged on the defendant's testimony. And that's simply not the case. There was overwhelming independent evidence. Nothing Dr. Yunofsky says, which is very inconclusive, by the way, which we'll get to in a moment. But nothing that he says would have affected the fact that Mr. Flores had a secret cell phone that none of his family members had ever seen before, separate from his personal phone, that he was for some reason using 30 minutes before he crossed the border. And that phone was subscribed to a different name, to a P.O. box in Irvine. Nothing can explain why he has that phone. Nothing can explain how $100,000 worth of methamphetamine was in his car. Nothing can explain why he's the driver, sole occupant, and then the registered owner of a vehicle that he now claims not to own. Nothing can negate the fact that it was his own nervous behavior that he exhibited to the primary booth that caused a further inspection. Nothing about being illiterate affects any of those things, and nothing can affect the fresh tool marks, the fresh paint, the Bondo, all of the things that exist in this case. So if the defendant hadn't testified to directly answer your question, Judge Wardlaw, he would have been convicted just as easily. It perhaps was a slightly faster verdict because he took the stand and lied about things that also had nothing to do with Dr. Unofsky's report. If you read the report, Dr. Unofsky confirms things that are actually quite impressive. Mr. Flores had 11 different jobs in the United States. He was never fired from any of them. He actually quit jobs to get better-paying jobs. Dr. Unofsky also says that he's extremely difficult to evaluate, and he urges caution over and over and over again on page 46, 47 to 49 of the record. And he actually concludes two things that I'd also like to stress. First, that Mr. Flores led a completely successful life and functions in society as long as it didn't involve reading or writing. Drug trafficking doesn't involve those things, so it's not impacted. And finally, on page 50 of the record, he actually indicates, Dr. Unofsky says, it's very possible that Mr. Flores was aware drugs were in the car. So to return to the materiality, there really is nothing material about it. Judge Hayes watched the defendant testify. He saw all of the evidence. He watched all 11 witnesses, and it was not of use of his discretion to conclude that this evidence would have had little to no impact in the face of all the other evidence that existed. Kennedy. Let me ask you this. Did anybody but Mr. Flores testify to the supposed transaction with Martinez? Indirectly. Indirectly, Your Honor. Family members identified Mr. Martinez as the person who rented a room from the family, and they identified him physically and sort of helped corroborate his existence. But what about the deal that Martinez was really buying the truck, and Martinez was outfitting it and wasn't telling Flores what was in the truck? There was testimony indirectly about this relationship with the truck, but I think it would be fair to say that Mr. Flores was the one who primarily put that story forward. And which brings us to the important point that even if he has trouble with dates and times, the false, the fake contract that he provided, nothing in Dr. Yanofsky's report shows that he should be unable to identify his own signature. So when he swears before the jury under oath that that's his signature, that's the contract, this is the agreement, this is how he was set up,  he lied about it, and it was made extremely evident very quickly. Unless the Court had other questions, we would submit. Thank you. All right. Thank you, counsel. United States v. Flores-Sakuna is submitted.
judges: Wardlaw, Bea, Smith